UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

A&S ENTERTAINMENT, LLC,

    Debtor.
_____/

Case No.: 21-14020-BKC-RAM
Chapter 11 Case

## MOTION TO DISMISS

CRSJ, Inc. ("Movant or Landlord"), by and through undersigned counsel and pursuant to Sections 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), hereby seeks dismissal of the instant proceeding with prejudice and in support thereof would state as follows:

1. The Debtor commenced this proceeding by the voluntary filing of a Petition for Relief under Chapter 11 on April 27, 2021 (the "Petition Date").

2. Landlord owns the real property and improvements thereon located at 250 N.E. 183rd Street, Miami, Florida 33179 (the "Premises"). The Debtor executed a Commercial Lease on March 1, 2012 with the Landlord for the use of the Premises (the "Lease").

3. On or about July 6, 2021, Landlord filed its Proof of Claim, which included a Schedule of liabilities due to actions commenced against the Landlord based on the Debtor's use of the leased Premises in accordance with the indemnification and hold harmless provisions in the Lease. [Claim 6]. Upon information and belief, and in violation of the provisions in the Lease (Section 10) requiring liability insurance, the Debtor has never indicated coverage existed under any insurance policy for the claims referenced in the Schedule attached to the Proof of Claim. Additionally, although discovery is scheduled, at present it appears the Debtor's current liability policy excludes claims for assault and battery.

4. Landlord recently conducted 2004 Examinations of the two (2) Managers of the Debtor. In connection with the examinations, the Debtor produced certain documents in response to the corresponding *duces tecum* request.

5. Although not previously disclosed to the Court or creditors, the testimony revealed that an entity owned by Manager Jones received a $100,000 transfer in 2021. When asked about that entity (CL Jones Holdings, LLC), Manager Jones testified it had no involvement with the Debtor. The testimony of Manager Jones was even more problematic in that she indicated it was a "loan" repayment but also confirmed there was no note, no interest rate, and in fact no terms other than it would be paid when funds were available[1]. Manager Jones also testified she was aware of alleged claims of creditors, including the DOR, at the time of the above transfer from the Debtor to her entity. And to no surprise, Manger Jones stated the Debtor had no plans to pursue a claim for the return of the $100,000 transfer. Even worse, the Debtor's sworn Statement of Financial Affairs states under penalty of perjury that there were no ("none") transfers to insiders in the year prior to the Petition [DE 37, p.19]. The Debtor has since amended its Statement of Financial Affairs to reflect the prior non-disclosed transfer. The Amended Plan, however, does not appear to address the asset (cause of action) which remains a conflict.

6. The Debtor also testified about the existence of an undisclosed secured creditor with a purported lien on its liquor license that has been paid interest post-petition without Court approval. An excerpt of the Debtor's General Ledger ending 7/31/21 is attached hereto as Exhibit "1". Manager Jones was unable to explain why the payments were made except to say she was told to do so, even though she testified she is in charge of the Debtor's operations.

---

[1] A copy of the transcripts from the examinations conducted on October 20, 2021 will be filed when provided to Movant. As such, Movant reserves the right to amend this motion accordingly.

7. Even more interesting, is that the purported secured creditor, Douglas Stratton, is the Debtors' liquor attorney per Manager Jones. No note or pledge has ever been provided, nor was this claim in the Debtor's initial Plan. A copy evidencing the lien is attached here to as Exhibit "2". Subsequent to the 2004 Examination, the Debtor amended its Schedules and Plan, which still fails to excuse the unauthorized post-petition payment or prior non-disclosure.

8. In regards to the Plan, when asked what the $17,000 monthly "Management Fee" payment represented [DE 83], Manager Jones testified it was for her, Manager Pierre and to repay loans for monies used by the Debtor to fund a prior settlement with the Landlord. When pressed as to the "loan", Manager Jones refused to answer other than to say there was a private lender. As to compensating Manager Pierre, Ms. Pierre testified her only involvement with the Debtor was very limited to the extent her input was requested or a signature was needed. Manager Pierre did not execute the Plan nor did she review any projections related thereto or perform the liquidation valuation in DE 83. In fact, neither representative testified they prepared the projections for the Plan, which counsel asserted was privileged and refused to produce [DE 96, ¶ 3].

9. The examination and prior communication also confirmed a secret sublease for a restaurant at the Debtor's Premises. This was only recently shared with the Landlord by way of an email dated September 22, 2021, attached hereto as Exhibit "3" ("Sublease"). The Landlord has never approved it, nor has the Court, yet SonSons Kitchen, Inc. is (or was) operating on the business Premises and paying the Debtor for the sublease, which the Debtor testified is prohibited under the Lease based on the anti-sublease provision. It is unknown if SonSons has workers compensation insurance, and the binder provided as to liability does not reflect the Landlord as an additional insured. The Debtor has now filed a Motion to in essence approve another sublease,

which Landlord opposes. See, DE 121. Regardless, seeking authority after the breach is not appropriate and subleases are a breach under the lease.

10. Based on Exhibit "3" and like communications, as well as the 2004 examinations, it is quite obvious the Debtor is using other professionals without discloser or approval by the Court. That would include attorney Elias Hilal, attorney Stratton (Exh 1 "Legal Fees") and/or Perez Accounting (Compare June Balance Sheet #6650 reflecting "0" in accounting fees with July General Leger (Perez Accounting $900) and August General Ledger (Perez Accounting $300)), attached as Composite Exhibits "4-A", "4-B" and "4-C". As evidenced by Exhibit "3", attorney Elias Hilal was copied on communications from the Debtor concerning the Sublease, as well as virtually all communications with the Debtor concerning insurance policies and/or claims post-petition.

11. Pursuant to Section 1112(b) of the Code, the Court shall convert or dismiss for "cause", whichever is in the best interest of creditors. The Code defines "cause" to include gross mismanagement or failure to maintain appropriate insurance that poses a risk to the estate. 11 U.S.C. § 1112(b) Movant submits that fraud and dishonesty likewise constitute "cause". As evidenced above, by all accounts cause exists to dismiss this case.

12. Indeed, cause exists due to the gross mismanagement of the Debtor due to the existence of undisclosed avoidable transfers with an insider, the unwillingness or inability of Debtor to pursue estate causes of action against insiders, conflicts of interest as to management and fulfilling fiduciary duties to the Debtor, and self-dealing by management under the Plan. In addition, there is the obvious lack of assault and battery insurance coverage, which the Debtor acknowledged is needed by way of its admission in Note 4, DE 117, p. 22 (a magnet for litigation).

13. Surely, the inaccurate Statement of Financial Affairs regarding payments to insiders, and the conflict of interest of no avoidance action being filed as to same coupled with post-petition payment to a pre-petition creditor and the use (and possible payment) of professionals neither retained or disclosed, raises questions of dishonest conduct, no differently than gross mismanagement, thereby constituting further cause. This is especially true given the Debtor handles approximately $250K-$300K in cash a month and the persons in charge of the Debtor lack operational experience and have breached their fiduciary duties as set forth above.

14. In analyzing a motion under Section 1112(b) of the Code, the Court is to determine if conversion or dismissal is in the best interest of creditors. In doing so initially, it must be stressed that this Motion only seeks dismissal. That is the case because it would appear to be unfair to subject an estate professional such as a trustee to deal with the significant management of cash and the potential liability of personal injury claims based on the Debtor's mismanagement, including the lack of appropriate insurance coverage for assault and battery. Moreover, given the inability of the Debtor to cure the Lease defaults and assume same, those defects will preclude a trustee from seeking assumption, so a dismissal appears to be inevitable. As such, Movant asserts dismissal is in the best interest of creditors.

15. 11 U.S.C. § 1112 governs the conversion or dismissal of a Chapter 11 bankruptcy case, and provides that the bankruptcy court must convert a Chapter 11 case to a Chapter 7 case or dismiss the case, whichever is in the best interests of creditors and the estate, when "cause" is established. If cause exists, then the court must dismiss or convert a case unless it finds and specifically identifies unusual circumstances; and the debtor, or any other party, establishes: (1) that there is a reasonable likelihood that debtor will confirm a plan within the timeframes in the Code or within a reasonable time; and (2) that the grounds for conversion or dismissal include an

act or omission of the debtor for which there exists a reasonable justification and that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

16.  Section 1112(b)(4) provides a non-exhaustive list of what constitutes "cause" to dismiss or convert a case, including: (1) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (2) gross mismanagement of the estate; (3) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (4) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (5) failure to comply with an order of the court; (6) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (7) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (8) failure to timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (9) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (10) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (11) failure to pay any fees or charges required under chapter 123 of title 28; (12) revocation of an order of confirmation under section 1144; (13) inability to effectuate substantial consummation of a confirmed plan; (14) material default by the debtor with respect to a confirmed plan; (15) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (16) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

17.  Because the foregoing list is *non-exhaustive*, "the court is able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual

cases. In determining whether cause exists to dismiss a case under § 1112(b), a court must engage in a 'case specific' factual inquiry which 'focus[es] on the circumstances of each debtor." *In re Intown Companies, Inc.*, 2017 WL 3491831, at *8 (Bankr. N.D. Fla. Apr. 14, 2017) (citations omitted). Thus, the determination of cause under Section 1112(b) is "subject to judicial discretion under the circumstances of each case." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

18.     Although not specifically enumerated in Section 1112(b), the Eleventh Circuit has recognized that a debtor's "lack of 'good faith' may constitute cause" for dismissal or conversion. *In re Daughtrey*, 896 F.3d 1255, 1276 (11th Cir. 2018) (quoting *In re Nat. Land Corp.*, 825 F.2d 296, 297 (11th Cir. 1987)).  For example, in one case from the Southern District of Florida, a corporate debtor's Chapter 11 case was dismissed for lack of good faith based on the debtor's payment of prepetition obligations without court authorization, execution of unauthorized post-petition financing arrangements, and diversion of assets to provide inventory for a new company owned partially by debtor's principal. *In re 239 Worth Ave. Corp.*, 236 B.R. 492, 493 (Bankr. S.D. Fla. 1999).  In rendering its decision, the court held that "[w]hen a debtor fails to comply with the terms of the Bankruptcy Code and continues to operate in disregard to its creditors' interests, a court has no alternative other than to dismiss the case." *Id*.

19.     For the reasons stated above, cause exists under Section 1112 to dismiss the case.

WHEREFORE, Movant seeks the entry of an Order dismissing this case, and for such other relief as may be just and proper.

Respectfully Submitted,

**DICKINSON WRIGHT PLLC**

/s/Alan J. Perlman, Esq.
Alan J. Perlman, Esq.
Florida Bar No: 826006
350 East Las Olas Boulevard, Suite 1750
Fort Lauderdale, Florida 33301
Phone: 954-991-5427
Fax: 844-670-6009
aperlman@dickinsonwright.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 10, 2021, a copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest who are participating in the CM/ECF system.

| | |
|---|---|
| Moffa & Bierman<br>Bankruptcy Counsel for the Debtor<br>3081 E Commercial Blvd., Suite 204<br>Fort Lauderdale, FL 33308<br>Telephone 954-634-4733<br>Fax 954-337-0637<br>Email john@moffa.law<br>allusers@moffa.law<br>*Attorney for Debtor* | Steven D Schneiderman<br>Office of the US Trustee<br>51 SW 1 Ave #1204<br>Miami, FL 33130<br>Telephone (305) 536-7285<br>Fax : (305) 536-7360<br>Email: Steven.D.Schneiderman@usdoj.gov<br>*Attorney U.S. Trustee* |

/s/Alan J. Perlman, Esq.
Alan J. Perlman, Esq.

4890-9551-5905 v1 [97108-1]