**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

In Re:

A & S ENTERTAINMENT, LLC                    Case Number 21-14020-RAM
dba The Office                                             Chapter 11
                         Debtor.

_____/

**MOTION TO COMPROMISE CONTROVERSY**

The Debtor-in-Possession, by and through its undersigned attorney requests that the Honorable Court enter an Order Granting this Motion to Compromise Controversy and approve the terms and conditions of the Settlement Agreement, with its attachment pursuant to 11 U.S.C. § 365, and Rule 9019, Fed.R.Bankr.P., moves (the "Motion") for the entry of an Order approving the compromise with the Landlord, CRSJ, Inc. (Landlord) attached hereto as (the "Agreement").

In support of this Motion the Debtor-in-Possession (Debtor) states:

**JURISDICTION, VENUE, STATUTORY AND PROCEDURAL BASIS**

1.      This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to sections 28 U.S.C §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A, B & L).

2.      The statutory basis for this Motion is 11 U.S.C. § 365(d)(2). The procedural predicate for the requested relief is Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

3.      On April 27, 2021, the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code and elected to have this case administered under Subchapter V of Chapter 11 of Title 11 U.S.C.

4.      The Debtor operates a gentlemen/s club located in a shopping center unit leased by the Debtor from the Landlord.

5.      The main issue in the case was a claim by the Florida Department of Revenue which the Debtor was unable to pay in the time demanded by this creditor and the Debtor's bank account was frozen pending an order of a court of competent jurisdiction..

6.      Prior to the filing of this case, the Landlord commenced eviction proceeding in which it asserted the right to evict for the failure of the Debtor to indemnify the Landlord for certain legal expenses.

7.      Additionally, the Landlord submitted a Proof of Claim in the amount of $215,510 which was the monetary "cure" amount the Landlord asserted.  In addition, the Landlord asserted non-monetary defaults in the Commercial Lease.

8.      On October 7, 2021, the Debtor filed a Motion to Assume Lease of Non-Residential Real Property regarding the Landlord's Commercial Lease with the Debtor.  The Debtor asserted it could promptly cure the alleged monetary default.

9.      The Landlord objected to the assumption of the Commercial Lease and, thereafter filed a Motion to Dismiss and Objections to a proposed management agreement and to Confirmation of the Debtor's Plan of Reorganization.

10.       As of December 2, 2021, the Debtor and the Landlord had been unable to reach an appropriate settlement and announced that to the Court and both parties  agreed to have the dispute heard at a Judicial Settlement Conference, which was held on January 6, 2022.

11.      At the Judicial Settlement Conference, the parties were able to agree to the general terms of an agreement between the parties

12.     On February 2, 2022, this Court heard that the parties were able to memorialize the terms and condition of the general terms including additional detail which was agreed by the Parties.

13.     The salient terms of the Agreement between the parties are as follows[1]: [1] the debtor will establish a trust fund of $75,000.00, on or before February 7, 2022, which will be held by the Landlord's attorney and may be used to reimburse attorneys' fees and costs incurred in litigation falling under the terms of the indemnification provisions of the Commercial Lease; [2] the Debtor will agree to pay the amount of $250,000 to the Landlord with$190,000.00 to be paid by March 7, 2022 and the balance paid in 24 equal monthly payments of $2,500.00, without interest.

14.     In consideration for the payment of monies and the other terms contained in the Agreement, the claims, objections and motions filed by the Landlord would be amicably resolved without the expense of litigation to the parties.

15.     The Debtor believes that resolving the disputes with the Landlord in the manner set forth in the Agreement will result in a substantial economic benefit to the Debtor and the creditors of this bankruptcy estate, in that the Debtor cured various claims against the Estate for an amount which could have been higher and for terms which the Debtor believes are sustainable by the Debtor.

16.     The Debtors submits that approval of the Settlement Agreement is in the best interests of all creditors of this estate and gives the Debtor and the Landlord more rights, with less expense of taking the various  disputed issues to evidentiary hearings to resolve and the legal

---

[1] The entire Agreement is attached and should be referenced if you have any additional questions.

expenses incurred in a situation which always involves the inherent risk associated with trials on the various issues.

## BASIS FOR THE REQUESTED RELIEF

A.    Applicable legal standard for approval by this Court

14.    "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." _In re Bicoastal Corp_., 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993). Fed. R. Bankr. P. 9019(a) grants the bankruptcy court the power to approve settlements and compromises. _GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.)_, 336 B.R. 843, 852 (S.D. Fla. 2005). Specifically, Fed. R. Bank. P. 9019 states: (a) "Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Accordingly, it is within the scope of this Court's authority to grant the Motion.

15.    "It is generally recognized that the law favors settlement of disputes over litigation for litigation sake." _In re Bicoastal Corp_., 164 B.R. When considering compromises or settlements for approval, the bankruptcy court is to "determine whether the proposed settlement is fair and equitable." _In re Air Safety Int'l, L.C._, 336 B.R. at 852. The United States Court of Appeals for the Eleventh Circuit has set forth factors to assist bankruptcy courts in determining whether a settlement proposal meets the appropriate standard. _Id_. These factors are as follows: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the

premises *("Justice Oaks Factors")*. See *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1549 (11th Cir. 1990). See also Romagosa v. Thomas (In re Van Diepen, P.A.), 236 Fed. Appx. 498, 504 (11th Cir. 2007) (setting forth Justice Oaks Factors and affirming bankruptcy court's approval of settlement agreement).

16.     Appellate courts review a bankruptcy court's approval of a settlement or compromise to determine whether there is a clear showing that the bankruptcy court abused its discretion. *In re Van Diepen, P.A*., 236 Fed. Appx. at 504; *In re Bicoastal Corp.,* 164 B.R. at 1016 (stating "the Bankruptcy Court has broad discretion to approve a Compromise."). Moreover, "[t]he bankruptcy court is not required to rule on the merits, and must look only to the probabilities." Id. Settlements or compromises should be approved unless they "fall below the lowest point in the range of reasonableness." *In re Bicoastal Corp.*, 164 B.R. at 1016.

B.     The Terms of the Compromise Meet the *Justice Oaks* Factors

17.     As applied to the circumstances presented by this case, the Debtor submits that the Justice Oaks Factors weigh in favor of approval of the Agreement as most contested matter in the bankruptcy case have now been resolved and the Plan is in a position to be confirmed with minor non-monetary changes.

**The Probability of Success in Litigation**.  The Debtor  believes that the claims it asserted in the case could be considered well-founded and that there is a high probability that he would succeed after a trial of those claims on the merits.  However, no litigation is free of risk.   And, at bottom, the claims asserted by the Landlord seek to recover monies it believes is due and owning under the terms of the Commercial Lease.  Therefore, the Debtor believes that this factor weighs in favor of the Agreement.

**The collection factor** favors settlement approval. There are general market based valuation/collection risks present under either scenario (litigation or settlement). However, the Debtor submits that the Agreement removes the risk of further waste or deterioration of Debtor's financial position which is attendant to protracted litigation between the parties. In that sense, the "collection risk" weighs in favor of approving the Agreement.

**Complexity of Litigation**. The complexity, inconvenience, and delay necessarily attendant to litigating the Adversary Proceeding to conclusion also favors approval of the Agreement. The Landlord has raised a host of procedural and legal issues concerning the claims asserted by the Landlord and the counter positions asserted by the Debtor. The Debtor submits that the "complexity" factor weighs in favor of approving the Agreement.

**Paramount interests of Creditors**. The Agreement is in the paramount interest of creditors and the Debtor believes that creditors of the Bankruptcy Estates will support approval of this Motion, in part, because the Debtor would need to find a new location to lease if the court we not to allow the assumption and cure of the Commercial Lease. While the Debtor cannot remove general market based risks associated with a loss of business lease through by a pandemic or other issues out of the Debtor's control, the Agreement unquestionably provides the best possible chance that claims in the Plan will be paid without interruption.

For all of the foregoing reasons, The Debtor submits that the proposed Agreement is well within the range of reasonable outcomes from continued litigation and should be approved.

**CONCLUSION**

18, Based upon the totality of circumstances presented, the Debtor respectfully submits that the proposed Agreement is fair and reasonable, represents a benefit to the

bankruptcy estate and its creditors, reflects the exercise of prudent business judgment, and satisfies the *Justice Oaks* Factors.

**WHEREFORE**, the Debtor requests that this Honorable Court Grant this Motion and approve the Settlement Agreement attached hereto, along with its Exhibit and for such additional relief as the Court deems appropriate..

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY I am admitted to the Bar of the United States District Court of the Southern District of Florida, I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A), I have ensured this document is in 12-point Times New Roman and is double spaced,  and that a true and correct copy of the foregoing was served via NEF on February 4, 2021 to all those who are registered thereon.

Submitted by:
Moffa & Bierman
Attorneys for the Debtor
3081 E Commercial Blvd., Suite 204
Fort Lauderdale, Florida 33308
Telephone:    954-634-4733
Facsimile:    954-337-0637
E-Mail:        john@moffa.law

By: /s/ John A. Moffa
John A. Moffa
FBN 0932760

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

A&S ENTERTAINMENT, LLC,

      Debtor.

_____/

Case No.:  21-14020-BKC-RAM
Chapter 11 Case

### SETTLEMENT AGREEMENT

WHEREAS the Debtor, A&S Entertainment, LLC ("Debtor"), and Landlord, CRSJ, Inc. ("Landlord"), are parties to that certain Lease dated March 1, 2012 (the "Lease") regarding the property located at 250 NE 183rd Street, Miami, Florida, 33179, as referenced in the Lease (the "Premises").  Debtor and Landlord have entered into this agreement to provide for the Debtor to assume the Lease as amended herein and as previously agreed by Order dated February 28, 2019 entitled "Agreed Order Settling the Case and Dismissing Case" entered in Miami Dade, Florida Civil Division Case Number 2018-12296.  For the sum of $10.00 and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged and deemed reasonable, the Debtor and Landlord hereby enter into the following settlement agreement as to the cure and assumption under 11 U.S.C.§365:

1.    In addition to all other obligations under the Lease, the Debtor shall pay the Landlord the sum of $250,000 as follows:

    i.    On or before the Effective Date (but in no event later than March 7, 2022), the Debtor / Reorganized Debtor shall pay or cause to be paid to the Landlord the sum of $190,000 in Certified Funds (unless from a Trust Account), sent via overnight delivery or

by wire, to Law Offices of Keith Diamond PA, 3440 Hollywood Blvd., Hollywood, FL

33021, for the benefit of Landlord;

    ii.      Commencing April 1, 2022, a payment of $2,500, and 23 additional payments of

$2,500 each on the first of each month thereafter, equating to an additional $60,000 in total.

Said payments shall be provided via wire transfer to Diamond Trust Account for Landlord.

If the monthly due date falls on a legal holiday or on a weekend, payment shall be due on

the immediate business day.  There shall be no cure period as to any default on the

foregoing payment amounts and/or due dates.. Upon a default, all sums outstanding shall

be accelerated and become immediately due and payable upon receipt of notice by the

Landlord.

2.      On or prior to the Effective Date (and in no event later than February 7, 2022), the Debtor

shall establish an escrow account for the sole benefit of the Landlord in regard to the

indemnification and hold harmless provision of the Lease by delivering a check for $75,000

payable to Law Office of Keith Diamond, Trust Account, and delivered overnight to the address

designated by Landlord or Diamond in writing (the "Escrow").

    i.      To the extent funds are disbursed from the Escrow, the Debtor shall provide

additional deposits so that the balance in the Escrow is not below $75,000 at any time.

Diamond or Landlord shall provide notice to Debtor should the balance in Escrow be below

$75,000, and the Debtor shall have 30 days from the date of said notice to replenish the

amount necessary for a $75,000 balance in Escrow, by wire transfer to Law Office of Keith

Diamond, Trust Account (with no right to cure).

ii.     Diamond shall maintain the Escrow in a segregated account and provide the Debtor, by providing a copy to their Counsel, with the corresponding statement generated each month that reflects disbursements and the balance.

iii.    The Escrow shall be used to pay for any reasonable attorney's fees, cost or expense of the Landlord, and any liability including to settle or resolve for itself, in connection with any right under Section 10 of the Lease or any claim commenced against Landlord or an affiliate (or affiliate of the Landlord's principal) in any way related to or involving a claim concerning the conduct, actions or non-actions of the Debtor or any employee, officer, guest or agent thereof, including security and/or the kitchen operator, or related to the Premises, including any property adjacent thereto used in the operations or business of the Debtor, or in any way related to or regarding the Debtor's business, operations, or management, or such other obligation or responsibility of Debtor, including, in regards to its agents, invitees or guests (a "Claim").

iv.     To the extent Landlord intends to release funds from Escrow for attorney fees, cost, expense or settlement, said request shall be provided to Debtor with the corresponding, reasonable back up documentation ("Request").  Except as to any settlements of $15,000 or below for any case or matter, which shall be deemed fully approved by Debtor, the Debtor shall have 20 days in which to provide its written opposition to any Request with a detailed basis thereto ("Objection").  If no Objection is timely made, any non-objectionable portion shall be released from Escrow forthwith.  The portion objected to shall be resolved by the Parties joint selection of a commercial litigator in Florida to serve as an arbiter or for each of their respective selections to jointly designate the arbiter ("Arbiter").  That Arbiter must be selected within 30 days of any Objection.  The Parties stipulate and agree

3

that the written decision of the Arbiter shall bind the Parties, and the non- prevailing party (determined by the Arbiter) shall be responsible to pay the fees of the Arbiter within 10 days of the invoice.

v.       Provided no claims exist or have been threatened against the Landlord (or its affiliates) within 6 months after expiration of the Lease, the balance in the Escrow will be returned to the Debtor based on written instructions to be provided to Diamond.

3.       The Debtor / Reorganized Debtor stipulate, consent and agree that the indemnification and hold harmless provision in Section 10 of the Lease and elsewhere, are legal and fully enforceable, and forever waive any ability to contest the enforcement thereof by the Landlord.

4.       It is contemplated the Premises (including property adjacent thereto used by Debtor in its business and/or operations) are to be annexed or otherwise considered an incorporated property within the City of Miami Gardens (the "Change").  Within ten days of notice by Landlord of the Change, the Debtor shall, at its sole cost and expense, request and/or apply for the presence of Miami Garden's police officers at the Premises from sundown until closure (as available) for everyday the Debtor is open throughout the term of the Lease, at its sole cost and expense ("Police Presence").  To the extent, Police Presence is not available, Debtor shall continue to provide private security from sundown to closure.  Landlord has the right to verify the Debtor's inability to procure the Police Presence.  If applicable, the Debtor shall provide proof of the Police Presence each month by forwarding to Diamond the contract, invoice and proof of payment to Landlord immediately upon the commencement and thereafter by the 10th each month of the Change.  Debtor shall have 10 days to cure any default associated with providing the information/documentation referenced above upon written notice by Landlord.  If Miami Gardens provides written evidence

that the Police Presence is not available, Debtor shall immediately and forthwith provide same to Landlord.  A breach of this provision shall constitute a material breach of the Lease.

5.      The Debtor's current kitchen/restaurant operator/manager Tison's Grub Spot, Inc. and/or Poor Boys Grill, LLC ("TGS/PBG") shall not constitute a breach or violation of the anti-sublease provision in Section 14 of the Lease, provided, however, any replacement thereof shall require the written consent of Landlord, which shall not be unreasonably withheld.  TGS/PBG or any other replacement (approved by Landlord) shall maintain insurance in favor of the Landlord as set forth in Section 10 of the Lease and the Escrow shall cover any claims against Landlord that relate to or involve TGS/PBG, its agents, or any replacement agreed to by the Landlord and each of the foregoing interests in or as to the subject property shall be subordinate to all of the rights and interests of the Landlord under the Lease.   No sublease of any kind shall be allowed in any regard under the Lease.  Landlord has the right to oppose either TGS/PBG to the extent the Manager of either is a convicted felon on probation by providing notice to Debtor.

6.      The Debtor's current ownership of 70% - 80% by Claudette Pierre and 20% - 30% by Ciara Jones shall not constitute a breach or violation of the change of control provision is Section 14 of the Lease, provided, however, any modifications as to the foregoing shall constitute and be deemed a material default and breach of the Lease.

7.      Subject to compliance by the Debtor as to the payments required on the Effective Date and the initial funding of the Escrow, the State Court Complaint for Eviction will be dismissed, and the Landlord's Motions in this case not identified below are withdrawn as moot subject to the foregoing settlement.  The Landlord shall have an allowed claim for the amount in Section 1 herein, and the Landlord's Motion for Post-Petition Attorneys' Fees [DE 130] shall be granted, with an amount allowed included as part of the claim set forth in Section 1 above.

8.      Nothing herein shall prejudice the rights of the Landlord in regard to third party claims involving the Debtor (or agents thereof) and/or its rights under the indemnification and hold harmless provisions in Section 10 of the Lease.

9.      Upon request, with a copy of any complaint or claim, Debtor shall have 5 business days from the date of a request from Landlord in writing to furnish Landlord with an Affidavit in the form attached hereto as Exhibit "1" (the "Affidavit").  The executed version of the Affidavit shall be notarized and be in substantially identical form as that attached as Exhibit "1."

10.     Section  2 (and all subparts), 4 and 9 above are material provisions and the Debtor hereby stipulates, consents and agrees that the breach of any such provision(s) shall constitute and be deemed a material default and breach of the Lease such that Landlord may evict the Debtor.

11.     The Debtor's Objection to Claim of CRSJ, Inc. is hereby denied with prejudice.

12.     Except as set forth herein, the Debtor and  Landlord release each other, and their respective officers, affiliates, agents and employees, from any claim or cause of action that was raised or that which could have been raised,  through the date hereof.  Except as to the rights herein and/or third party claims and/or rights of the Landlord under Section 10 of the Lease not currently pled and served on Landlord (and to avoid any doubt, nothing herein shall release or limit the rights or claims of Landlord in any way associated with the alleged acts in August of 2021 to the extent applicable), the Landlord and Debtor shall dismiss any cross claims, defenses or counterclaims in any action against the other upon  payment to Landlord of the amounts in Section 1(i) and 2(i).

13.     Prior to confirmation, counsel for Debtors shall maintain funds in its Trust Account to fund the initial $190,000 due in Section 1 and the additional sum of $75,000 to establish the Escrow in Section 2, with proof of said money provided in writing to counsel for Landlord.

14.    The Parties stipulate and agree that the Lease is amended solely to the extent set forth herein and remains subject to that previous settlement order dated February 28, 2019 (Case No. 2018-12296 CA – 01(41), Miami Dade Circuit Court) and  Case 2011-20316, Final Judgment of 12/11/2011.

15.    Miscellaneous.

a)    Assignment.  This Agreement is not assignable by either Party except with the prior written consent of all other Parties.  Any assignment made in contravention of this provision is void.

b)    Amendment.  No amendment of this Agreement will be binding unless executed in writing by all Parties.

c)    Jointly Drafted.  This Agreement shall be deemed jointly drafted and written by the Parties and shall not be construed or interpreted against the Party originating or preparing any part of it.

d)    Waiver.  No waiver of any provision of this Agreement will be binding unless executed in writing by all Parties.  No waiver of any of the provisions of this Agreement will constitute a waiver of any other provision (whether or not similar), nor will such waiver constitute a continuing waiver unless otherwise expressly provided.

e)    Governing Law.  This Agreement will be interpreted and enforced under and in accordance with the internal laws of the State of Florida without regard to conflict of law principles.

f)    Venue.  The Parties agree that in any dispute over the interpretation or enforcement of this Agreement, exclusive jurisdiction and venue will be in the Circuit Court for the 11th Judicial Circuit in Miami Dade County, Florida.  The Parties agree that they will not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience

of forum, or lack of personal jurisdiction in any action or suit brought in accordance with the foregoing.

g) <u>Binding Effect</u>.  This Agreement shall be binding on, and inure to the benefit of, the Parties and their respective successors, and assigns.

h) <u>Further Assurances</u>.  The Parties agree to execute such further and additional documents that may be necessary, proper, required, desirable, or convenient for the purpose of fully effectuating this Agreement.

i) <u>Headings</u>.  The headings of this Agreement are for convenience or reference only, and shall not limit, expand, modify, or otherwise affect their meaning hereof.

j) <u>Counterparts and Electronic Signatures</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same document.  For purposes of this Agreement, electronic or facsimile signatures shall be deemed originals.

k) <u>Entire Agreement</u>.  This Agreement, together with the Lease, the State Court Settlement Order referenced herein and all exhibits referenced herein, constitutes the entire agreement between the Parties pertaining to the subject matter of this Agreement.  Any and all prior written or oral agreements or drafts of agreements between the Parties pertaining to the subject matter of this Agreement are superseded and of no force and effect and may not be used as evidence in the interpreting the provisions of this Agreement.

l) <u>Authority</u>.  The Parties acknowledge they have read this Agreement carefully, that they have been afforded sufficient time to understand the terms and effects of this Agreement, that they, in fact, fully understand all of the terms and effects of this Agreement, that they have consulted legal counsel prior to signing this Agreement, and that they are voluntarily

entering into and executing this Agreement. The Parties warrant and represent that the person signing this Agreement, and all ancillary agreements, on their behalf has the proper authority to endorse and execute this Agreement and all exhibits hereto, and that there are no others necessary to effectuate this Agreement.

m) <u>Notices</u>. Notices pursuant to this Agreement shall be in writing sent as follows:

> Debtor: A&S Entertainment, LLC
> 250 NE 183rd Street
> Miami, FL 33179
>
> With a copy to:
>
> Law Office of Elias R. Hilal
> Attention: Elias Hilal, Esq.
> Elias.Hilal@erhlaw.com
> 633 SE 3rd Ave, Ste 301
> Fort Lauderdale, FL 33301-315
>
> And With a copy to Ciara Jones: ciara305office@gmail.com
>
> Landlord: CRSJ, Inc.
> c/o Law Offices of Keith Diamond PA
> 3440 Hollywood Blvd
> Hollywood, FL 33021
> Email:
> Phone: 954-618-1007

n) The prevailing party shall be entitled to reasonable attorneys fees and costs in the event of a breach by the other party hereto or in regards to any action to enforce the rights set forth in this Agreement (including on appeal). Any award in favor of the Landlord shall be paid from the Escrow without applicability of the Objection described above.

o) Notwithstanding any provision in the Plan (including all modifications thereto) or the Confirmation Order, the terms and provisions of the Settlement shall control the rights of the Debtor and Landlord in respect to the subject Lease. This provision shall be included in the Confirmation Order itself.

Debtor:

_____
A&S Entertainment, LLC, Manager
Ciara Jones for A&S Entertainment, LLC

Landlord:

_____
CRJS, Inc., President

4872-4491-7516 v1 [97108-1]

EXHIBIT 1

[FORM AFFIDAVIT]

| | |
|---|---|
| **MARY O. TAIWO,** in her capacity as personal representative for the estate of Emmanuel Olussola (deceased) | IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA |
| Plaintiff, | CIRCUIT CIVIL DIVISION |
| v. | CASE NO.: CACE15-016190 (25) |

**A&S ENTERTAINMENT, LLC.,** d/b/a **THE OFFICE,** a Florida Limited Liability Company; **CLAUDETTE M. PIERRE,** an individual; **GREGORY PIERRE,** an individual; **ALIX BEAUBRUN,** an individual; **SIGENSTZ MOREAU,** an individual; **CRSJ, INC.,** a Florida for-profit corporation; **JAMES D. FULFORD,** an individual; **PINNACLE PROTECTIVE SERVICES, INC.,** a Florida for-profit corporation; **JOSEPH BOYD, JR.,** an individual; **DIPLOMAT INTERNATIONAL, LLC,** a Florida for-profit corporation; **MICHAEL A. VENABLE,** an individual; and **WORLDWIDE TACTICAL PROTECTION, LLC,** a Florida for-profit corporation,

Defendants.

_____/

### AFFIDAVIT ON BEHALF OF DEFENDANT A&S ENTERTAINMENT, LLC
### IN SUPPORT OF MOTION FOR SUMMARY FINAL JUDGMENT

BEFORE ME, the undersigned authority, personally appeared Ciara Jones who, after being duly sworn, did depose and state as follows:

1.      I am over the age of twenty-one (21) and otherwise competent to make this Affidavit.

2.      I am presently the General Manager of A&S ENTERTAINMENT, LLC ("A&S"), a Defendant in the above-styled lawsuit, and, in such capacity, I am authorized to make all statements contained in this Affidavit.

3.      This Affidavit is made upon my personal knowledge and upon the books of records of A&S made and kept in the regular and ordinary course of its business and under my supervision and control.

4.      I have personally reviewed the [insert Incident: Ex ___ Complaint filed in the above-styled lawsuit by Plaintiff _____. In the Complaint, _____ alleges that _____ concerning the Premises, including all property adjacent thereto used in the business and/or operation of A&S (the "Subject Premises") on or about _____ ___, _____ (the "Subject Incident").

5.      On or about March I, 2012 - CRSJ, INC. ("CRSJ") as Lessor, and A&S, as Lessee, entered into a long-term triple-net Commercial Lease whereby A&S leased the Subject Premises from CRSJ. A true and correct copy of the triple-net Commercial Lease (the "Lease") is attached to Defendants' Motion for Summary Final Judgment as Exhibit "A." The 15-year term of the Lease commenced on March 1, 2012 and ends on the last day of March, 2027.

6.      A&S, as Lessee, was solely responsible for procuring, maintaining, managing, supervising and/or paying for all security staff and personnel at the Subject Premises. CRSJ had no such responsibility under the Lease or otherwise, nor did any affiliate of CRSJ or an affiliate of the Principal of CRSJ.

7.      At the time of the Subject Incident, A&S had the responsibility to operate, and control the Subject Premises.  CRSJ had no such responsibility under the Lease or otherwise, nor did any affiliate of CRSJ or an affiliate of the Principal of CRSJ.

2

8.      Under the terms of the Lease, CRSJ had no responsibility for maintenance, inspection, or oversight of any aspect of A&S's business or operations at the Subject Premises all of which was within A&S's authority and control.

9.      At the time of the Subject Incident, A&S did, in fact, have in place security staff and personnel to monitor and control A&S's nightclub business at the Subject Premises.

10.      At the time of the Subject Incident, A&S had a contract with _____ to provide security at the Subject Premises. This contract was in effect on the date of the Subject Incident.

11.      At the time of the Subject Incident, A&S and/or _____ controlled all security and supervised all security staff and personnel at the Subject Premises.

12.      At the time of the Subject Incident, CRSJ had no right or responsibility under the Lease or otherwise to control security or to supervise security staff and personnel at the Subject Premises.

13.      At no point in time after CRSJ entered into the Lease with A&S on or about March 1, 2012, including on the date of the Subject Incident, has CRSJ had possession and/or custody and/or control over any portion of the Subject Premises or over any aspect of A&S's business operations at the Subject Premises including, without limitation, A&S's use and management of security personnel at its nightclub.

14.      At no time since CRSJ and A&S entered into the Lease has A&S been the agent of CRSJ or authorized to act as the agent of CRSJ. At all times since they entered the Lease, the sole

and exclusive relationship between CRSJ and A&S with regard to the Subject Premises has been

that of landlord and tenant.

FURTHER AFFIANT SAYETH NOT

PURSUANT TO 28 U.S.C, § 1746. I DECLARE (OR UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: _____

_____
Ciara Jones

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was sworn to and subscribed before me this _____ day of February, 2022 by Ciara Jones, who [  ] is personally known to me or [  ] produced a driver's license as identification.

_____
Notary Public, State of Florida

My commission expires:

4